INDUSTRIAL SALES ENGINEERING COMPANY, RESPONDENT, v. ISADORE AGISIM, APPELLANT.

Submitted May 17, 1929—Decided July 15, 1929.

Before Justices PARKER, BLACK and BODINE.

For the appellant, *Louis A. Fast.*

For the appellee, *William Greenfield.*

PER CURIAM.

Suit on eight notes at $53.33 each for installments on purchase of an oil heater. Defense, that the heater did not function as guaranteed in writing, and counter-claim for damages. It appeared that the plaintiff got the heater back, and allowed $250 therefor, which the court credited on the notes and gave a judgment for plaintiffs for a balance of $216.93 from which defendant appeals.

According to the state of case, settled by the court, plaintiff's evidence was that failure to get the required heat "was due to the use of unsuitable fuel oil."

The contract of sale is in writing and voluminous, but it says nothing about the kind of oil required. The appliance is called an "automatic oil-burner." The guarantee is as follows:

"Guarantee to faithfully perform all of the above specifications with respect to this installation, further guaranteeing to you the mechanical construction of the entire equipment, also first class workmanship in every detail, and that the Aetna Automatic Oil-Burner will positively produce the amount of heat required in your boiler or furnace for the maximum radiation for which your boiler or furnace is rated by the manufacturer for the sum of eleven hundred dollars, payable as follows: Upon signing of this contract $300 when tank is installed, $800 when burner is installed, in fifteen monthly notes at $53.33, first note payable Sept. 1/27.

"The Aetna Automatic Oil-Burner is fully guaranteed by the manufacturer."

The grounds of appeal are, in substance:

1. Admitting testimony that defendant used inferior and unsuitable oil.

2. Ruling that plaintiff was not required to insert specification of character of oil to be used, in the contract.

3. Putting on defendant the burden of proving in what way the apparatus was defective.

4. General error.

2. Of course there is no absolute duty on a contracting party to embody or omit any particular stipulation. The question will be what construction and effect to give to the contract as made, in the presence, or absence, of a particular stipulation, as the case may be.

1. In the absence of stipulation the contract will be construed as calling for the use of oil reasonably adapted to the purpose of that class of heater. Hence, testimony as to what oil defendant did use, and that it was or was not unsuitable, was competent. The objection seems to have been general and the ruling was necessarily general also. The case does not show any spcific question objected to and laid before us.

3. Defendant set up a guarantee and alleged a breach, *i. e.*, that the burner did not heat as guaranteed. Plaintiff confessed and avoided, saying, in substance, that assuming that it did not heat, that was because defendant used poor oil where he should have used reasonably good oil. This, as it seems to us, put on plaintiff the burden of proving that assertion. If there is a guarantee of performance and the thing does not perform, it is sufficient for the guaranteed party to show that in the first instance without being required to explain why it does not perform. This is the implication in *Domestic Co.* v. *Meloy,* 144 *Atl. Rep.* 871; 7 *N. J. Adv. R.* 675, in which the heater did not function and plaintiff properly undertook to explain. In the present case the judge seems to have ignored the fact that there was a guarantee of performance and treated it as a guarantee of quality merely. He certifies that he expressly ruled "that it was incumbent upon the defendant to establish in what way the apparatus was defective."

This we think was erroneous; and as the error may well have controlled the decision, we must assume that it was harmful.

The judgment will be reversed to the end that the case be retried.